UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BELTON,<br><br>    Plaintiff,<br><br>    v.<br><br>HERTZ LOCAL EDITION TRANSPORTING, INC.,<br><br>    Defendant. | Case No. 19-cv-00854-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 12 |

Plaintiff Troy Belton initially filed his complaint in the Superior Court of California, County of Alameda against Hertz Local Edition Transporting Inc. ("Hertz") for a number of employment related claims under state law. Complaint ("Compl.") attached as Exhibit A to Notice of Removal ("NOR") [Dkt. No. 1]. Hertz removed the case pursuant to the Class Action Fairness Act ("CAFA") and diversity jurisdiction under 28 U.S.C. § 1332(A)(1). Belton now moves to remand. CAFA does not apply because Belton's suit is not styled as a class action. There is insufficient evidence that the amount in controversy required for diversity jurisdiction is met. Accordingly, I grant Belton's motion.

## BACKGROUND

### I. ALLEGATIONS IN THE COMPLAINT

Belton was employed by Hertz as a transporter. *Id.* at ¶ 13. His duties consisted of driving customers to various locations after the customers purchased car rental and/or transportation services from Hertz. *Id.* at ¶ 11. Belton alleges that he, and other aggrieved employees, should have been paid overtime because they were denied meal and rest breaks during mandatory staff meetings. *Id.* at ¶ 14.

Belton's complaint contains nine causes of action: (1) constructive discharge in violation

1  of public policy, (2) violation of Oakland Municipal Code § 5.92 et seq. for failure to pay
2  minimum wage, (3) failure to provide rest and meal breaks, (4) failure to pay timely wages, (5)
3  failure to furnish complete and accurate itemized wage statements, (6) failure to pay all wages due
4  upon termination, (7) failure to reimburse for necessary business expenses, (8) failure to provide
5  overtime pay, and (9) violation of California Business and Professions Code § 17200 et seq. for
6  restitution. *Id.* at 8-18. The third through eighth causes of action are brought under the California
7  Private Attorneys General Act ("PAGA") for penalties on behalf of himself and all other
8  "aggrieved employees." *Id.*

## II. REMOVAL TO FEDERAL COURT

Hertz removed the suit on February 15, 2019. It asserts that this case is removable under CAFA jurisdiction because Belton's claim for restitution under California Business and Professions Code § 17200 (1) satisfies CAFA's diversity requirement, (2) the putative class would exceed the 100 class member requirement, (3) Hertz is not a government entity, and (4) the aggregate amount in controversy exceeds $5,000,000. NOR at 3-11.

Belton moves to remand, arguing that CAFA is inapplicable and, even if it is applicable, the causes of action do not meet the amount in controversy requirement under either CAFA or 28 U.S.C. 1332(A)(1). Plaintiff's Notice of Motion, Motion, and memorandum of Points and Authorities in Support of Motion to Remand Under 28 U.S.C. § 1447(c) ("Mot.") [Dkt. No. 12].

## LEGAL STANDARD

## I. REMOVAL GENERALLY

A defendant sued in state court may remove the action to federal court if the action could have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). The notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28

U.S.C. § 1446(b)(3).

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (noting that "federal courts [must] scrupulously confine their own jurisdiction to the precise limits which the statute has defined") (citation and internal quotation marks omitted). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

## II. REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), gives federal courts original jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra*, 775 F.3d at 1197.

Under CAFA, a defendant's notice of removal needs only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not need evidentiary submissions. *Id.* (*quoting Dart*, 135 S. Ct. at 554). When testing the amount in controversy alleged, courts look first to the allegations of the complaint. *Id.* If the damages are unstated or if the defendant views the damages as understated, the defendant must show by a preponderance of evidence that the aggregate amount in controversy exceeds the $5,000,000 threshold. *Id.* The defendant in a jurisdictional dispute has the "burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id.*

When the plaintiff contests the defendant's amount-in-controversy allegations, both sides submit proof, and the court decides whether the jurisdictional threshold has been met. *Id.* (*quoting*

*Dart*, 135 S. Ct. at 554). The parties may submit evidence beyond the complaint such as affidavits, declarations, or other "summary-judgment type evidence relevant to the amount in controversy." *Id.* (*citing Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

The burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to "research, state, and prove the plaintiff's claims for damages." *Donald v. Xanitos, Inc.*, No. 14-cv-05416-WHO, 2015 WL 1774870, at *4 (N.D. Cal. 2015) (*quoting Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008)). However, "[m]ere speculation and conjecture, with unreasonable assumptions" is not sufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also Fong v. Regis Corp.*, No. 13-cv-04497-RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaints." *Fong*, 2014 WL 26996 at *2. CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim[s] of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

**DISCUSSION**

**I. DOES THE CLASS ACTION FAIRNESS ACT APPLY?**

Belton argues that because his ninth cause of action under California Business and Professions Code § 17200 is not brought as a class claim, it does not fall under CAFA.[1] Mot. at 4-5. In support of his argument, Belton cites the Ninth Circuit's decision in *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1033 (9th Cir. 2014), where the court considered

---

[1] The parties agree that CAFA does not apply to Belton's PAGA claims. Mot. at 4-5; Defendant's Opposition to Plaintiff's Motion to Remand ("Oppo.") at 6 [Dkt. No. 13].

4

whether a case brought by the Hawaii Attorney General under a statute similar to Section 17200 could constitute a class action when it was not styled as one, even where the relief sought might ultimately require class certification. *Louie*, 761 F.3d at 1038-42. The Ninth Circuit reasoned that:

> "To maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity. The grant, sua sponte, of class action relief when it is neither requested nor specified, is an obvious error." *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976) (citations omitted); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785 (3d ed. 2005) ("[A court] cannot convert an individual action into a class action on its own motion."). Moreover, a plaintiff who denies having brought a class action surely cannot adequately represent the purported class, *see E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 405 (1977), and "the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed [plaintiffs are] critical requirements in federal class actions under Rules 23(a)(4) and (g)," [*Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014)].

*Id.* at 1041-42. Therefore, it held, the "appropriate inquiry is . . . whether a complaint seeks class status . . . by invoking a state class action rule," and that "[f]ailure to request class status or its equivalent is fatal to CAFA jurisdiction." *Id.* at 1040.

In this case, Belton's Section 17200 claim is not styled as a class action. Compl. at 17-18. It does not assert class allegations under Federal Rule of Civil Procedure 23 or California Code of Civil Procedure § 382. The civil cover sheet affirmatively checks the box stating that this case is not a class action suit. Civil Cover Sheet attached as Exhibit A to Notice of Removal ("NOR") [Dkt. No. 1]. Belton does not seek class status, plead the existence of a class, define the limits of a class, or even reference the word class in his complaint. Thus, as master of his complaint, Belton's decision not to request class status or its equivalent is fatal to CAFA jurisdiction. *See also Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059-60 n.7 (9th Cir. 2015) (Although nine causes of action were brought as class claims and triggered CAFA, the fact that plaintiff expressly did not seek class status for tenth cause of action is "fatal to CAFA jurisdiction" over that claim); *Hoffman v. Sterling Jewelers, Inc.*, No. 18-cv-0696, 2018 WL 6830610, at *3 (S.D. Cal. Dec. 21, 2018) (denying CAFA jurisdiction under *Louie* where the complaint is not styled as a class action); *Guzman v. Healthcare Servs. Grp., Inc.*, No. 16-cv-04690, 2016 WL 4950783, at *4 (C.D.

Cal. Sept. 15, 2016) (same); *Kidner v. P.F. Chang's China Bistro, Inc.*, No. 15-cv-287, 2015 WL 2453523, at *4 (C.D. Cal. May 21, 2015) (same); *Peña v. Sea World, LLC*, No. 14-cv-0391, 2014 WL 12508597, at *4 (S.D. Cal. Aug. 26, 2014) (same).

In opposition, Hertz argues that the California Supreme Court has held that "a private party may pursue a representative action under [Section 17200] only if the party 'complies with Section 382 of the Code of Civil procedure' [and] such an action must meet the requirements for a class action." Oppo. (*citing Arias v. Superior Court*, 46 Cal. 4th 969, 980, (Cal. 2009)). While it may be that Belton's Section 17200 claim "disclaiming class status may fail under state law[,]" courts cannot disregard a "complaints' unambiguous class action disclaimers." *Louie*, 761 F.3d at 1039-1040. As the court in *Hoffman* observed:

> Defendant's removal theory puts the cart before the horse. Even assuming Defendant's argument is correct, the fact that a plaintiff's complaint seeks damages only technically available in a class action does not somehow transform the complaint into a class action complaint. Plaintiff may very well amend her Complaint to assert a class action, but a plaintiff's anticipated future actions do not bestow subject matter jurisdiction.

*Hoffman*, 2018 WL 6830610, at *3 (internal citation omitted). If Hertz is correct that Belton may only prevail on his Section 17200 claim if it is brought as a class action, Belton has two choices: he could forfeit his damages under Section 17200, or he can amend his claim to state a class action. *Id.* at *3 n.2. If he later amends to assert a class action, removal under CAFA would be possible, even if untimely, as long as "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* (*citing* 28 U.S.C. § 1441(c)(1)).

The complaint, as it is currently styled, cannot support jurisdiction under CAFA. I do not reach the parties arguments related to CAFA's amount in controversy requirement.

## II. IS THE AMOUNT IN CONTROVERSY FOR DIVERSITY JURISDICTION MET?

Belton argues that Hertz has failed to establish that his individual damages will exceed the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a). Mot. at 8-9. The parties do not dispute the following amount: (i) back pay of $20,000, (ii) premium pay of $10,000, (iii) $3,472 in waiting time penalties, (iv) $8,000 in overtime, (v) $5,000

1  in minimum wages and (vi) $4,000 for non-compliant wage statements. Mot. at 9; Oppo. at 2-3. This leads to an undisputed amount of individual damages totaling $50,472. *Id.* The parties disagree on the amount of emotional distress damages, whether attorneys' fees are available, and if attorneys' fees are available, in what amount.

**I.     Emotional Distress Damages**

In its notice of removal, Hertz represents that the value of Belton's emotional distress damages flowing from his constructive discharge claim would likely be $50,000. NOR at ¶ 43. Hertz cites four cases in its notice of removal and two cases in its opposition that it believes are comparable to conclude that $50,000 would constitute a conservative award. *Id.*; Oppo. at 5. Belton offers no information about his emotional distress damages and counters that Hertz's valuation is speculative and that the cases it cited are distinguishable. Mot. at 8-9. I shall consider each of Hertz's cases in turn.

In *Davis v. Ayala*, No. 09-cv-02629-SI, 2011 WL 7141949 (N.D. Cal. Dec. 15, 2011), a former nurse in a county jail sued a former lieutenant and sergeant for retaliation for exercising her First Amendment rights to free speech and freedom of association. *Id.* The nurse stated that after leading a successful campaign (that involved its own instances of retaliation) to no longer have her, or other nurses, answer to an abusive supervisor, the defendants threatened her with termination and transferred her to a unit of the jail that housed the most hostile and mentally unstable inmates. *Id.* She contended that their conduct was malicious, oppressive, and in reckless disregard of her rights, and that due to stress, she had to take medical leave, and ultimately was forced to resign. *Id.* The jury awarded the former nurse $320,157 in lost wages, $8,800 in past medical expenses and $200,000 for pain and suffering. *Id.*

Belton states that he was constructively discharged because Hertz violated the "well-established public policy prohibiting employers from failing to pay employees all wages due and payable to them[,]" and that Hertz's failed to pay "overtime wages, premium pay, reimbursement, and minimum wages due to him." Compl. at ¶¶ 30-31. The facts in Davis are so clearly distinguishable from those in Belton's complaint that *Davis* is barely useful. But if they were, Belton argues that in *Davis*, the emotional distress damages were approximately 61% of

7

compensatory damages, and using the undisputed compensatory damages figure here would lead to only $12,200 in emotional distress damages. Reply at 3. An award of $12,200 would be insufficient to meet the amount in controversy requirement.

*In Keiffer v. Bechtel Corp.*, 65 Cal. App. 4th 893, 895 (Cal. Ct. App. 1998), the plaintiff was terminated during a period of corporate downsizing. At trial, he prevailed on claims of age discrimination, breach of an implied contract to terminate only for cause, and breach of the implied covenant of good faith and fair dealing. *Id.* The jury awarded him $322,975 in compensatory damages, $225,000 in emotional distress damages and $800,000 in punitive damages. *Id.* Again, as Belton notes, the facts are dissimilar, and using the ratio of compensatory damages to emotional distress damages in *Kieffer* would only yield $14,000 here. Oppo. at 2. Such an award would still be short of the amount in controversy requirement.

In *Silo v. CHW Medical Foundation*, 86 Cal. App. 4th 947, 955 (Cal. Ct. App. 2001), a case about religious discrimination, the jury awarded the plaintiff $6,305 in economic damages and $1 in noneconomic damages. *Silo* appears to be wholly inapplicable and it is unclear why Hertz believes it is helpful to its argument.

In *Satrap v. Pac. Gas & Elec. Co.*, 42 Cal. App. 4th 72, 75-76 (Cal. Ct. App. 1996), an employee of PG&E for at least 27 years, brought a whistleblower claim against PG&E. Satrap volunteered to cooperate with the California Public Utilities Commission's investigation of PG&E's gas purchasing. *Id.* Before he met with the investigators, PG&E instructed him not to discuss the contents of an interim report on its internal investigation of plaintiff. *Id.* The report discussed, among other things, concerns he had expressed over a domestic contract negotiation he had participated in that he believed involved some improper political influences, and his suspicion that PG&E had been overpaying its Canadian gas suppliers. *Id.* Nevertheless, he discussed some of these issues with the Utilities Commission and was allowed to return to work but was demoted and eventually quit under circumstances that were found by a jury to constitute constructive termination. *Id.* The case ultimately went to trial for breach of contract, wrongful termination in violation of public policy, and invasion of privacy. *Id.* The jury rendered its verdict in Satrap's favor, awarding him economic damages of $48,750, noneconomic damages of $225,000, and

8

punitive damages of $250,000. *Id.* The jury specifically found that he had been terminated without cause, and in retaliation for his disclosures to the Utilities Commission. *Id.* The jury also found that public disclosures by PG&E that he was being investigated for accepting kickbacks were false. Satrap is unhelpful to Hertz because the facts are too distinguishable, and it is impossible to tell from the opinion what part of the award can properly be attributed to his wrongful termination claim, as opposed to his breach of contract and invasion of privacy claims.

In *TJ Simers v. Tribune Company*, (Case No. BC524471), (Los Angeles Superior Court, November 4, 2015), 2015 Jury Verdicts LEXIS 9723, the plaintiff was a sports columnist for the Los Angeles Times for over twenty years. In March 2013, he collapsed and was eventually diagnosed with complex migraine syndrome. *Id.* A few months later, he was told that there were problems with his column and interview techniques that had never been mentioned before, and the number of columns he was to write per week was reduced. *Id.* Eventually he was told that he had violated the Times' ethics code by allegedly pitching a script about his life, when he had not done so, and was then demoted to an entry-level reporter position. *Id.* He resigned because he found the situation intolerable and believed that he was actually terminated because of his age, disability, and taking of medical leave. *Id.* Simers filed suit, asserting claims of age and disability discrimination and harassment, and retaliation for complaints of discrimination and harassment, in violation of the Fair Employment and Housing Act. He also asserted claims of retaliation for taking leave and wrongful termination. *Id.* The jury found Simers had a physical condition that limited a major life activity, the Times knew about the condition and subjected him to adverse employment actions, his age was a substantial motivating reason for the actions, and the actions were a substantial factor in causing him harm. *Id.* The jury also found the Times intentionally created, or knowingly permitted, working conditions to exist that were so intolerable that a reasonable person in Simers' position would have had no reasonable alternative except to resign, and that he resigned because of those working conditions. *Id.* The jury awarded Simers $330,358 for past economic damages, $1,807,033 for future economic damages, $2,500,000 for past noneconomic loss, and $2,500,000 for future noneconomic loss. *Id.* It is difficult to imagine how the facts in *TJ Simers* and the jury's award of $5,000,000 in noneconomic damages could be

probative in this case. The circumstances here bear no relation to *TJ Simers* and is of no help to Hertz.

Hertz's last case is *Velasquez v. County of Ventura*, (Case No. B238939) (Ventura Superior Court, October 27, 2011), 2011 Jury Verdicts LEXIS 200672. In *Velasquez*, the plaintiff was a senior investigator for the Ventura County District Attorney's Office who claimed that after he gave testimony in gender discrimination lawsuits of two other district attorney investigators, his supervisors retaliated against him and constructively discharged him by forcing him to leave the office. *Id.* He claimed that after his testimony, he was subject to two internal affairs investigations, given a lesser position, and denied a promotion. *Id.* The jury awarded Velasquez $6,000 in past lost earnings capability, $600,000 in future lost earnings capability, and $750,000 in past pain and suffering. Again, it is difficult to see how a case with such disparate facts from the one here could have any probative value in determining what Belton's emotional distress damages would be if he prevailed.

Hertz has provided no probative evidence to justify its claim that Belton's emotional distress damages would amount to $50,000, much less a preponderance of evidence as required by *Dart*. 135 S. Ct. at 554. Although Belton has not submitted any evidence to show what the likely emotional distress damages would be, there is effectively nothing from Hertz to counterbalance Belton's lack of evidence. From the parties' submissions, I am unable to find that the emotional distress damages would, taken together with the undisputed damages, meet the amount in controversy requirement because "any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas*, 553 F.3d at 1244. Such a finding would require pure speculation.

## II. Attorneys' Fees

When calculating attorneys' fees for the purposes of determining the amount in controversy, the Ninth Circuit has not decided whether courts are limited to the fees accrued at the time of removal, or if they should account for fees over the entire projected life of the case. *Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1072 (N.D. Cal. 2018) (Gonzales Rogers, J.). District court authority is split. *Id.* (*citing Hernandez v. Towne Park, Ltd.*, 2012 WL

2373372, at *19 (C.D.Cal. Jun. 22, 2012) ("courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case," and collecting cases)).

Because Hertz asks that I calculate the fees based on what Belton has incurred as of the date of removal, I will use that method for the purposes of this motion.[2] Oppo. at 5 n.2. Hertz estimates that Belton's counsel has expended at least twenty hours on the matter, and if billed at a rate of $500 an hour, would work out to $10,000 in fees. Oppo. at 5-6. Under this mode of analysis, added together with the undisputed damages totaling $50,472, the amount in controversy requirement is not met.

## CONCLUSION

Defendant cannot establish jurisdiction under either CAFA or 28 U.S.C. § 1332(a). CAFA is not applicable because the complaint is not styled as a class action. The amount in controversy required for diversity jurisdiction is not met. Belton's motion to remand is granted.

**IT IS SO ORDERED.**

Dated: May 13, 2019

William H. Orrick
United States District Judge

---

[2] If fees are calculated based on the projected life of the case, the analysis is a bit more complicated. As an initial matter, attorneys' fees are not available for Belton's constructive discharge claim. *Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, 647 F. App'x 763, 771 (9th Cir. 2016) (PAGA's fee shifting provision only applies to the representative causes of action, not individual wrongful termination cause of action). The key question, then, is what percentage of attorneys' fees under Belton's PAGA claims and his Section 17200 claim can properly be attributed to him, and not the other allegedly aggrieved employees. Courts in this district have found that attorneys' fees must be distributed pro-rata to all aggrieved employees the plaintiff represented. *See Patel v. Nike Retail Servs.*, Inc., 58 F. Supp. 3d 1032, 1048-1049 (N.D. Cal. 2014) (Tigar, J.). Because Hertz does not explicitly address this mode of analysis, I won't either. *See Steenhuyse*, 317 F. Supp. 3d at 1073 (declining to estimate plaintiff's pro-rata share of fees where defendant has failed to provide evidence of the pro-rata share). Even if I were to use the 25% of compensatory damages figure suggested by Hertz in its notice of removal, fees would only total $12,618 and the amount in controversy requirement still would not be met. NOR at ¶ 45.

11